# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL CRAWFORD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:07CV354MLM |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Petition for Writ of Habeas Corpus filed by Petitioner Michael Crawford ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 6. Petitioner filed a Traverse. Doc. 12. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 11.

## I.
## BACKGROUND

On February 12, 2002, Petitioner was charged by information in lieu of indictment as follows: Count I, murder in the first degree, in that on or about Monday, October 23, 2000, at about 3:57 p.m., in the City of Bellefontaine Neighbors, in St. Louis County, Missouri, Petitioner after deliberation, knowingly caused the death of Dion Butler by shooting him; Count II, armed criminal action, in that Petitioner knowingly committed the felony of murder in the first degree charged in Count I by, with, and through the use, assistance, and aid of a deadly weapon; Count III, assault in the first degree, in that on or about Monday, October 23, 2000, at about 3:57 p.m., in the City of Bellefontaine Neighbors, in St. Louis County, Missouri, Petitioner knowingly caused serious physical injury to Roland Morgan by shooting him; and Count IV, armed criminal action, in that Petitioner

knowingly committed the felony of assault in the first degree charged in Count III, by, with, and through the use, assistance, and aid of a deadly weapon. Petitioner was charged as a persistent offender in Count V in that he had pleaded guilty or was found guilty of two felonies committed at different times. Resp. Ex. A at 15-17.

At Petitioner's trial there was testimony that on the early afternoon of October 23, 2000, Tamika Beverly loaned her green Pontiac Grand Am to her boyfriend, Robert Reece; that later that same afternoon, Harold Anderson, who was twelve years old at the time, was outside an auto parts store at the intersection of Jennings and Lewis & Clark Boulevard; that Anderson was with two adults, Ronald Morgan and Dion Butler who were buying a battery for Butler's truck; that at the same time Beverly Williams was in her car at the intersection of Lewis & Clark and Jennings Station Road and saw Anderson, Morgan, and Butler working on the truck in the parking lot of the auto parts store; that a green Grand Am pulled up and parked on the far side of the parking lot; that the passenger in the car, identified as Petitioner, got out and walked toward the front of the store passing Butler's truck; that as he passed the truck, Petitioner raised up his shirt and pulled out a gun; and that after Anderson said that Petitioner had a gun, Anderson, Morgan, and Butler ran. Resp. Ex. C at 347-53, 384-86, 562-63.

In particular, Williams, who was in her car at the intersection, testified that she heard gunshots from the auto parts parking lot and turned and saw Anderson and another person running on the left side of the truck and two other men running on the right side of the truck. Resp. Ex. C at 386. Anderson testified that he saw Petitioner shoot Morgan and Butler; that Morgan and Butler "dropped"; and that he saw Petitioner then run back to the Green Grand Am. Resp. Ex. C at 353-55. A detective testified that Butler was a suspect in the killing of Petitioner's brother. Resp. Ex. C at 607-608.

2

Petitioner was found guilty as charged and sentenced to consecutive sentences of life imprisonment without parole for the murder conviction and three thirty-year terms for the remaining counts.

Petitioner filed a direct appeal. The Missouri appellate court affirmed the judgment against Petitioner. State v. Crawford, 144 S.W.3d 301 (Mo. Ct. App. 2003); Resp. Ex. F. Petitioner filed a pro se post-conviction relief motion. Resp. Ex. N at 3-15. Counsel was appointed and filed an Amended Motion to Vacate, Set Aside, or Correct Judgment. Resp. Ex. N at 21-54. The motion court issued its Findings of Fact, Conclusions of Law, Order and Judgment, denying Petitioner post-conviction relief. Resp. Ex. N at 57-60. Petitioner filed an appeal with the Missouri appellate court. On May 2, 2006, the Missouri appellate court affirmed the judgment of the motion court. Resp. Ex. Q.

Petitioner filed his § 2254 Petition with this court on February 20, 2007. In his § 2254 Petitioner raises the following issues:

**(1)** Petitioner's right to due process was violated when the trial court admitted evidence of Harold Anderson and Beverley Williams's identification of Petitioner as the shooter;

**(2)** Petitioner was denied due process because there was a biased juror, Paul Saey, on his jury;

**(3)** The trial court erred in failing to individually question each juror sua sponte regarding the publication of a St. Louis Post Dispatch article which included inadmissible evidence.

Doc. 1.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125

3

F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim

4

evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992) (citation omitted). Actual innocence is required to meet the miscarriage-of-justice exception. See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316). The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context. See Dretke, 541 U.S. at 393. In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

In any case, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Sweet, 125 F.3d at 1152 n.9 (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." Schlup, 513 U.S. at 327 (emphasis added). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise of due diligence." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833 (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to

5

construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

Petitioner presented the issues raised in Ground 1 and 3 to the Missouri appellate court. The court finds, therefore, that Petitioner has not procedurally defaulted these issues. Petitioner, however, did not raise the issue of Ground 2 before the Missouri appellate court. As Petitioner has not stated grounds to excuse his procedural default of Ground 2, the court finds that Ground 2 should be dismissed as procedurally defaulted.

Petitioner has exhausted his State remedies. Further, Petitioner's § 2254 Petition is timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 262, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be

7

considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500

(8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a

10

judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

## IV.
## DISCUSSION

**Ground 1- Petitioner's right to due process was violated when the trial court admitted evidence of Harold Anderson and Beverley Williams's identification of Petitioner as the shooter:**

In support of Ground 1 Petitioner contends that the trial court erred in denying Petitioner's motion to suppress identifications by Harold Anderson and Beverley Williams because both of these

11

identification witnesses were next to each other at the showup which took place at the time of Petitioner's initial arrest and at the subsequent identification in the live line-up. Petitioner further argues that the showup and the subsequent identifications were impermissibly suggestive and that the prior out of court identifications by Anderson and Williams should have been suppressed.

Upon addressing the issue of Petitioner's Ground 1 the Missouri appellate court held as follows:

> ... Defendant alleges that the trial court erred in overruling his motion to suppress identification testimony in that the identifications were procured as a result of "unnecessarily suggestive police procedure." He further alleges that the subsequent admission of identification testimony from witnesses was error.
>
> We will affirm the trial court's ruling on a motion to suppress unless it is clearly erroneous. State v. Lanos, 14 S.W.3d 90, 93 (Mo. App. 1999). As an initial matter we note that "[i]dentification testimony is usually admissible because 'courts rely upon the good sense and judgment of jurors for determining the trustworthiness of identification.'" State v. Middleton, 995 S.W.2d 443, 453 (Mo. banc 1999), ... "The linchpin of due process in identification procedures is reliability . . . ." Middleton, 995 S.W.2d at 453.
>
> Our review of pretrial identification has two components. The first question is whether the lineup was unduly suggestive or "conducive to irreparable mistaken identification." State v. Hunter, 43 S.W.3d 336, 340 (Mo. App. 2001) (quoting State v. Glover, 951 S.W.2d 359, 362 (Mo. App. 1997)). Where the procedure is not unduly suggestive, the court may admit the identification. Id. If the court determines that the identification procedures "were so suggestive as to render the out-of-court identification unreliable, then the pre-trial [sic] identification will be excluded." Id. Generally, showups, situations in which police escort a witness to a scene to identify a suspect, are valid under Missouri law. State v. Lawrence, 64 S.W.3d 346, 354 (Mo. App. 2002). "Pre-trial [sic] showups are valid under Missouri law even where the subject is in handcuffs and the officers say defendant is a suspect." Id. (internal citations omitted).
>
> Here, Defendant has failed to establish any questionable police conduct that would result in an unreliable identification procedure. Officer Kardasz, who conducted the showup, testified that Beverly Williams identified Defendant as the shooter right away. Harold Anderson, who was 12 at the time of the incident, was unsure of the suspect's identity at the time of the showup, but this evidence goes to the reliability, not admissibility of his later identification. The officers involved in the lineup testified that the witnesses made their identifications separately, and that each identified Defendant quickly, leaving no room for suggestibility. Although the

evidence is that the witnesses were in the same hallway at the time they identified the Defendant, the evidence does not suggest that either identification was tainted by the other's witness's presence. The two witnesses were standing at least 15-20 feet apart in the darkened corridor. Anderson, who was uncertain at the showup, viewed the lineup and implicated Defendant by stating "yes" in what Officer Kardasz described as a soft voice when Defendant entered the room. Williams also made her identification of Defendant while the two witnesses were separated. Pretrial identifications are unnecessarily suggestive where the identification is a result of police procedure, not the witness's independent recall. Hunter, 43, S.W.3d at 340. There was no evidence presented at the suppression hearing that suggests that the showup and the lineup identifications were a result of police action and not of the witness's independent recall.

Defendant also argues the reliability of the identifications. In determining the reliability of an eyewitness identification, the court considers five factors: (1) the witness's opportunity to view the suspect; (2) the witness's degree of attention; (3) the accuracy of the witness's description; (4) how certain the witness is in making the identification; and (5) the amount of time between the witnessed event and the identification procedure. Middleton, 995 S.W.2d at 443.

Anderson watched Defendant approach the car where Anderson and the victims were replacing a car battery. He watched Defendant exit the passenger side of the car, approach the victims, draw a gun and begin firing. Williams viewed the entire incident from an adjacent intersection. Anderson was focused on escaping the shooter, but he watched the shooter approach. Williams was focused on the event for obvious reasons. Degree of attention is not an issue. The witnesses' descriptions were accurate; Anderson stated that he was a short, bald black man, and Williams consistently identified him based on the shape of his head. Only 15 minutes elapsed between the time of the incident and Ms. Williams's first identification of Defendant. Twelve days passed before the lineup when both witnesses identified Defendant. There is nothing in the facts to suggest that the identifications were either inherently unreliable or rendered unreliable by questionable police procedure. Furthermore, the jury had an opportunity to hear the witnesses describe their observations. Both eyewitnesses were cross-examined. It is the jury's province to decide whether the witnesses' testimony was credible. See id. at 453. The ruling on the motion to suppress and subsequent admission of identification evidence were not in error.

Resp. Ex. F at 4-7.

Pursuant to Williams, 529 U.S. 362, the court will consider federal law applicable to the issue of Petitioner's Ground 1. The United States Supreme Court addressed the issue of tainted identification in Neil v. Biggers, 409 U.S. 188, 198 (1972), where the Court held that:

> We have considered on four occasions the scope of due process protection against the admission of evidence deriving from suggestive identification procedures. In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court held that the defendant could claim that "the confrontation conducted . . . was so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law." Id., at 301--302, 87 S.Ct., at 1972. This we held, must be determined "on the totality of the circumstances."...
>
> Subsequently, in a case where the witnesses made in-court identifications arguably stemming from previous exposure to a suggestive photographic array, the Court restated the governing test:
>
>> "(W)e hold that each case must be considered on its own facts, and that convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

The Supreme Court established in Neil, 409 U.S. at 199-200, five factors to be considered when determining, under the totality of circumstances whether the challenged confrontation between the witness and the suspect was impermissibly suggestive. Factors to be considered in evaluating likelihood of misidentification because of suggestiveness of confrontation procedures, for purpose of determining admissibility of testimony concerning out-of-court identification, include: (1) the opportunity of witness to view the defendant at time of crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by witness at the confrontation; and (5) the length of time between the crime and the confrontation. See id.

The Missouri appellate court cited factors identical to those articulated by the Supreme Court in Neil upon considering whether the out-of-court identification of Petitioner by Williams and Anderson was tainted. Further, the Missouri appellate court applied those factors to the facts of Petitioner's case and concluded that there was nothing to support a conclusion that these

identifications were inherently unreliable or rendered unreliable by police procedure. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it was a reasonable application of federal law. See Neil, 409 U.S. at 198-200. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 1 is without merit and that relief on its basis should be denied.

**Ground 3 - The trial court erred in failing to individually question each juror sua sponte regarding the publication of a St. Louis Post Dispatch article which included inadmissible evidence:**

In support of Ground 3 Petitioner argues that the court should have questioned jurors individually regarding an article about Petitioner's trial in the St. Louis Post Dispatch; that the article contained inadmissible evidence as to statements made by a previously acquitted co-defendant who did not testify at Petitioner's trial; and that the article implicated Petitioner as the perpetrator. Petitioner contends that the "trial court's response to the article was not commensurate[] with the enormous threat to [his] constitutional right to a fair trial before an impartial jury." Doc. 12.

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held as follows:

> ... Defendant alleges that the trial court plainly erred in failing to individually question each juror sua sponte regarding the publication of an allegedly prejudicial newspaper article. After learning of the newspaper article, the court and counsel had a discussion outside the presence of the jury wherein the judge stated he would ask the collective jury whether they had read the article. If any juror answered affirmatively, that juror would be questioned separately. Defense counsel stated, "[t]hat's fine." When the court asked whether any of the jurors read the article, the entire jury indicated that they had not.
>
> Our Supreme Court heard an analogous case in 1970. In State v. Howard, the appellant asserted plain error in that the judge questioned the jurors collectively about an allegedly prejudicial newspaper article, elicited a negative response, and thereafter did not allow the appellant to interrogate the jurors individually. 449 S.W.2d 662, 663 (Mo. 1970). The court stated, "[s]ince none of the jurors responded affirmatively,

15

> the trial court was not required to permit interrogation of the jurors individually." A court is entitled to believe a juror's unequivocal assertions when questioned by the court. State v. Christeson, 50 S.W.3d 251, 268 (Mo. banc 2001), *cert. denied*, 534 U.S. 978 (2001).
>
> The facts in the case at bar are consistent with the cases cited above. The court addressed the alleged misconduct and was entitled to believe the jury's response. We fail to see how this procedure resulted in manifest injustice to Defendant. Further, we are unconvinced that *sua sponte* questioning of the jury would have caused a different result. Point III denied.

Resp. Ex. F at 7-8.

Pursuant to Williams, 529 U.S. 362, the court will consider federal law applicable to Petitioner's Ground 3. The United States Supreme Court held in Marshall v. United States, 360 U.S. 310, 312 (1959), in regard to jurors' reading news articles concerning a trial, that "[t]he trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. (citing Holt v. United States, 218 U.S. 245, 251 (1910). The Court further held that "[g]eneralizations beyond that statement are not profitable, because each case must turn on its special facts." Id.

In the matter under consideration, as noted by the Missouri appellate court, the trial judge questioned the jurors collectively to determine whether any one of them had read the newspaper article. As no juror responded affirmatively, there was no need for the court to question any juror individually. The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. See Marshall, 360 U.S. at 312. Further, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 3 is without merit and that relief on its basis should be denied.

# V.
# CONCLUSION

The court finds that Petitioner has procedurally defaulted Ground 2; that Petitioner's Grounds 1 and 3 are without merit; and that, therefore, the relief sought in Petitioner's § 2254 Petition should be denied. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the § 2254 Petition filed by Petitioner is **DENIED,** and this case is **DISMISSED**, with prejudice; Doc. 1

**IT IS FURTHER ORDERED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability will be **DENIED**;

**IT IS FURTHER ORDERED** that a judgment incorporating this Memorandum Opinion shall issue this same date.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of August, 2007.